IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| WOMEN FIRST HEALTHCARE, INC., | ) | |
| | ) | Case No. 04-11278 (MFW) |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of McKesson Corporation ("McKesson") to Compel Payment of Escrow Funds.  The Motion was opposed by Women First Healthcare, Inc. ("the Debtor") and the WFHC Liquidating Trust ("the Trust").  For the reasons stated below, the Court will deny the Motion.

I.    BACKGROUND

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 29, 2004.  Shortly thereafter, the Debtor filed a motion to sell its Vaniqa assets. After an auction process, SkinMedica, Inc. ("SkinMedica") was the successful purchaser for a gross sale price of $38.85 million. The Court approved the SkinMedica asset purchase agreement ("the APA") by Order dated June 25, 2004.

Pursuant to the APA, SkinMedica agreed to assume and pay

---

[1]    This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

certain obligations of the Debtor to its customers, including McKesson, for Vaniqa product returns. Specifically, under section 2.02(a)(iv) of the APA, SkinMedica agreed to assume, and deduct from the purchase price, the Liability to Customers. Section 2.03(a)(i)(A) defines Liability to Customers as "the dollar amount . . . of any obligations of Seller to wholesalers and chain warehouses for Product returned by such parties to Seller on or before June 25, 2004 and not replaced by Seller with alternative product or a return of purchase price on or before such date. . . ." A dispute arose as to the amount due to McKesson for product returns. As a result, SkinMedica paid McKesson the undisputed amount (approximately $3.45 million) and placed in escrow the disputed amount ($656,184). To the extent the escrowed funds are not due to McKesson they will be paid to the Debtor.

On September 29, 2004, McKesson filed its Motion to compel payment of the disputed amounts from the escrow. The Debtor filed an Objection on November 16, 2004. Oral argument on the Motion was held on November 18, 2004, after which the Court directed additional briefing from the parties.

In the interim the Debtor proceeded with its liquidating plan of reorganization which it had filed on July 16, 2004. After several amendments, the Second Amended Plan was confirmed on December 28, 2004. Pursuant to the Plan, all assets of the

Debtor were vested in the Trust.  As a result, the Trust filed a brief in opposition to the McKesson Motion on May 2, 2005.  After additional briefing, a notice of completion of the briefing was filed on September 26, 2005, and the matter is ripe for decision.

II. JURISDICTION

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (N) & (O).

III. DISCUSSION

The Trust asserts that McKesson is not entitled to any further payments under the APA because the estate has a claim against McKesson for unpaid product shipped to it which must be set off against any claim that McKesson has against the estate for returned product.  Specifically, the Trust asserts that McKesson owes the estate $656,184 for product shipped by the Debtor to McKesson in March and April 2004 which remains unpaid.

A.   Setoff Rights

The Debtor asserts the estate has a right of setoff pursuant to section 553, which provides that nothing in the Bankruptcy Code affects "any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the

3

case" except with respect to certain circumstances not applicable here.  11 U.S.C. § 553(a).

The Trust argues that the right of setoff arises under section 558, not section 553, because the latter deals only with a creditor's right of setoff not the debtor's.  Section 558 provides that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate. . . ."  11 U.S.C. § 558.  The Trust argues that the Debtor's setoff right is a defense under state law which is preserved by section 558.  See, e.g., In re PSA, Inc., 277 B.R. 51, 54 (Bankr. D. Del. 2002) (holding that "a right to setoff must be established under state law so that the debtor then may assert the setoff as a defense reserved by § 558."); In re Papercraft Corp., 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991) (holding that "Section 558 preserves to the Debtor its prepetition [non-bankruptcy] defenses to causes of action.").

Although both section 553 and section 558 preserve the right of setoff, there is a significant difference between the two. Section 553 restricts setoff rights by permitting a creditor to set off only debts that both arose pre-petition.  11 U.S.C. § 553(a).  There is no such restrictive language in section 558 and, consequently, Courts have concluded that a debtor may set off pre-petition claims against post-petition obligations it owes.  See, e.g., PSA, 277 B.R. at 54 (holding that "the

prepetition/postpetition distinctions are irrelevant under § 558"); Papercraft, 127 B.R. at 351 (concluding that "because § 558 preserves to the Debtor the defenses it would have had prepetition, the court must examine the transaction as though the bankruptcy had not been filed.  Doing so eliminates the prepetition/postpetition distinction and, in essence, obliterates the requirement that the mutual debts must both be prepetition obligations in a § 558 context.").

The Court agrees with the Trust that section 558 is applicable in this case because it is the estate, not the creditor McKesson, that is exercising its right of setoff.  Therefore, the estate need not establish that the debts to be set off are both pre-petition.  Even if the more stringent requirements of section 553 applied, however, the Court concludes that the debts may be set off because both debts are pre-petition.[2]

### 1. Mutuality of the Parties

Under either section, to exercise the right of setoff, there must be mutuality between the parties, that is the estate must seek to set off a debt it owes to the creditor against a debt the creditor owes to the estate.  See, e.g., Citizens Bank of Md. v.

---

[2] Because the Court concludes that the estate may set off the two obligations, the Court will not consider the Trust's arguments about the amount of McKesson's claim in the event there is no right of setoff.

Strumpf, 516 U.S. 16, 18 (1995) (holding that the right of setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A'.") (quoting Studley v. Boylston Nat'l Bank, 229 U.S. 523, 528 (1913)); In re Winstar Commc'ns, Inc., 2003 Bankr. Lexis 1496 at *4 (Bankr. D. Del. 2003) aff'd 315 B.R. 660 (D. Del. 2004) (holding that to assert a right of setoff under section 553 of the Code, there must be (1) a pre-petition debt owed by the creditor to the debtor, (2) a pre-petition debt owed by the debtor to the creditor, and (3) the debt and claim must be mutual obligations); PSA, 277 B.R. at 54 (holding that state law permitted defendant to set off a debt owed him by the Plaintiff against the claim of the Plaintiff against him).

    McKesson denies the right of the estate to set off the two claims arguing that there is not the requisite mutuality between the parties.  Specifically, McKesson asserts that under the APA SkinMedica became liable to McKesson for the debt owed by the Debtor for the returned product thereby eliminating any obligation of the Debtor to McKesson for that debt, except secondarily.  McKesson asserts that the estate may not set off the obligation owed by McKesson to it against SkinMedica's obligation for which the estate is only secondarily liable.  See, e.g., 5 Collier on Bankruptcy, ¶ 553.03[3][b][i] (15th ed. rev.

2005) (section 553 does not permit triangular setoff, i.e., where A is attempting to offset a debt it owes to B against an obligation owed to A by C).

The Debtor and Trust dispute McKesson's argument. They assert that the debt owed by the Debtor to McKesson for returned product may be set off against the obligation owed by McKesson to the Debtor for product sold to it. The Trust notes that in the proof of claim filed by McKesson two months after the sale to SkinMedica was approved, McKesson included the amounts due for the returned product. This, the Trust argues, is an admission by McKesson that the estate still owed McKesson for that debt, notwithstanding the fact that SkinMedica assumed the liability in the APA.

Further, the Trust notes that under state law the assumption of a debt by a third party does not relieve the original obligor of liability. See, e.g., 13 Williston on Contracts, § 37:12 (4th ed.) (where one party agrees to pay the obligation of another, the creditor has the right to sue either party for satisfaction of that obligation); Corbin on Contracts § 787(6). See also, Kraus v. Willow Park Pub. Golf Course, 73 Cal. App. 3d 354, 371 (1977) (holding that "a third party creditor beneficiary [McKesson] can sue either the promisor [SkinMedica] or the promisee [the Debtor] or may join them and obtain judgment against both.")

7

The Court rejects McKesson's argument. There is nothing in the APA which releases the estate from the debt it owed to McKesson for the returned product. Nor is there anything in that agreement which converts the estate from the primary obligor on the McKesson debt to a secondary obligor. At all times the estate remained obligated to pay the McKesson payable. Thus, the debt for returns and the debt for the product sold by the Debtor to McKesson are mutual debts, being owed to and from the same parties. Therefore, there is the mutuality of the parties necessary to set off the McKesson payable against the McKesson receivable.

2.   Mutuality of the Debts

McKesson argues nonetheless that setoff is not available because its right to payment under the APA is a post-petition obligation. As such, McKesson argues it cannot be set off against the pre-petition account receivable that McKesson owes to the Debtor. See, e.g., Cooper-Jarrett, Inc. v. Central Transport, Inc., 726 F.2d 93, 96 (3d Cir. 1984) (holding that a creditor may not set off a pre-petition claim against a post-petition debt it owes to the debtor).

In addition to arguing that this is not required under section 558 when the estate is the one seeking to set off, the Trust disputes McKesson's facts. As noted, McKesson has included in its proof of claim the amounts due for the returned product.

This, the Trust argues, is an admission by McKesson that this obligation is a pre-petition debt.

The Court agrees with the Trust. The obligation created post-petition by the APA is the obligation of SkinMedica to pay the debt owed by the Debtor for the McKesson returns. The obligation of the Debtor to pay that debt arose pre-petition (in 2003 and 2004). As noted above, the APA did nothing to change the Debtor's obligation to McKesson. Thus, the debts owed to and from McKesson are both pre-petition obligations.

    B.   <u>Intention of the APA</u>

McKesson also suggests that the estate should be obligated to set off the amount due by McKesson against McKesson's pre-petition unsecured claim for other products (which McKesson asserts is in excess of $6.8 million). To do otherwise, McKesson asserts, would amend the APA or frustrate its intention to pay McKesson in full for the Vaniqa returned product.

Again, the Court disagrees. The APA expressly allows the Liability to Customers to be reduced by replacement product provided by the Debtor. While the account receivable which the estate seeks to use as a setoff does not represent product expressly designated as replacement product, it was in fact that. The product was Vaniqa, identical to the product that was returned, and was delivered in March and April 2004 almost simultaneously with the return of product by McKesson.

9

Therefore, under the express terms of the APA, the obligation owed to McKesson must be reduced by the receivable for new product.

Furthermore, the setoff of the account receivable for this new product against the account payable for returned product does not defeat the intent of the APA. The intent of the APA is to pay McKesson only for the obligations the Debtor owed it. To the extent the Debtor has a defense (its right of setoff), there is no obligation and the estate is entitled to the escrowed funds.

Contrary to McKesson's argument, the APA did not intend to elevate McKesson's claim to administrative status; it simply provided a second source of payment of that claim. To the extent there is no claim, because of the estate's right of setoff, neither the estate nor SkinMedica is obligated to pay McKesson.

IV. <u>CONCLUSION</u>

For the reasons stated above, the Motion of McKesson to compel payment of the escrow funds will be denied.

An appropriate Order is attached.

BY THE COURT:

Dated: December 7, 2005

Mary F. Walrath
United States Bankruptcy Judge