## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| WOMEN FIRST HEALTHCARE, INC., | ) |
| | ) Case No. 04-11278 (MFW) |
| Debtor. | ) |
| | ) |

### AMENDED MEMORANDUM OPINION[1]

Before the Court is the Motion of McKesson Corporation ("McKesson") to Compel Payment of Escrow Funds.  The Motion was opposed by Women First Healthcare, Inc. ("the Debtor") and the WFHC Liquidating Trust ("the Trust").  For the reasons stated below, the Court will deny the Motion.

I.    BACKGROUND

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 29, 2004.  Shortly thereafter, the Debtor filed a motion to sell its Vaniqa assets.  After an auction process, SkinMedica, Inc. ("SkinMedica") was the successful purchaser for a gross sale price of $38.85 million.  The Court approved the SkinMedica asset purchase agreement ("the APA") by Order dated June 25, 2004.

---

[1]  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

Pursuant to the APA, SkinMedica agreed to assume and pay certain obligations of the Debtor to its customers, including McKesson, for Vaniqa product returns.  Specifically, under section 2.02(a)(iv) of the APA, SkinMedica agreed to assume, and deduct from the purchase price, the Liability to Customers. Section 2.03(a)(i)(A) defines Liability to Customers as "the dollar amount . . . of any obligations of Seller to wholesalers and chain warehouses for Product returned by such parties to Seller on or before June 25, 2004 and not replaced by Seller with alternative product or a return of purchase price on or before such date. . . ."  A dispute arose as to the amount due to McKesson for product returns.  As a result, SkinMedica paid McKesson the undisputed amount (approximately $3.45 million) and placed in escrow the disputed amount ($656,184).  To the extent the escrowed funds are not due to McKesson they will be paid to the Debtor.

On September 29, 2004, McKesson filed its Motion to compel payment of the disputed amounts from the escrow.  The Debtor filed an Objection on November 16, 2004.  Oral argument on the Motion was held on November 18, 2004, after which the Court directed additional briefing from the parties.

In the interim the Debtor proceeded with its liquidating plan of reorganization which it had filed on July 16, 2004. After several amendments, the Second Amended Plan was confirmed

2

on December 28, 2004.  Pursuant to the Plan, all assets of the
Debtor were vested in the Trust.  As a result, the Trust filed a
brief in opposition to the McKesson Motion on May 2, 2005.  After
additional briefing, a notice of completion of the briefing was
filed on September 26, 2005, and the matter is ripe for decision.

II.  JURISDICTION

        This Court has jurisdiction over this contested matter
pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (N) & (O).

III.  DISCUSSION

        The Trust asserts that McKesson is not entitled to any
further payments under the APA because the estate has a claim
against McKesson for unpaid product shipped to it which must be
set off against any claim that McKesson has against the estate
for returned product.  Specifically, the Trust asserts that
McKesson owes the estate $656,184 for Vaniqa shipped by the
Debtor to McKesson in March and April 2004 which remains unpaid.

    A.  Setoff Rights

        The Debtor asserts the estate has a right of setoff pursuant
to section 553, which provides that nothing in the Bankruptcy
Code affects "any right of a creditor to offset a mutual debt
owing by such creditor to the debtor that arose before the
commencement of the case . . . against a claim of such creditor

against the debtor that arose before the commencement of the case" except with respect to certain circumstances not applicable here.  11 U.S.C. § 553(a).

The Trust argues that the right of setoff arises under section 558, not section 553, because the latter deals only with a creditor's right of setoff not the debtor's.  Section 558 provides that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate. . . ."  11 U.S.C. § 558.  The Trust argues that the Debtor's setoff right is a defense under state law which is preserved by section 558.  See, e.g., In re PSA, Inc., 277 B.R. 51, 54 (Bankr. D. Del. 2002) (holding that "a right to setoff must be established under state law so that the debtor then may assert the setoff as a defense reserved by § 558."); In re Papercraft Corp., 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991) (holding that "Section 558 preserves to the Debtor its prepetition [non-bankruptcy] defenses to causes of action.").

Although both section 553 and section 558 preserve the right of setoff, there is a significant difference between the two. Section 553 restricts setoff rights by permitting a creditor to set off only debts that both arose pre-petition.  11 U.S.C. § 553(a).  There is no such restrictive language in section 558 and, consequently, Courts have concluded that a debtor may set off pre-petition claims against post-petition obligations it

4

owes.  See, e.g., PSA, 277 B.R. at 54 (holding that "the prepetition/postpetition distinctions are irrelevant under § 558"); Papercraft, 127 B.R. at 351 (concluding that "because § 558 preserves to the Debtor the defenses it would have had prepetition, the court must examine the transaction as though the bankruptcy had not been filed.  Doing so eliminates the prepetition/postpetition distinction and, in essence, obliterates the requirement that the mutual debts must both be prepetition obligations in a § 558 context.").

The Court agrees with the Trust that section 558 is applicable in this case because it is the estate, not the creditor McKesson, that is exercising its right of setoff.  Therefore, the estate need not establish that the debts to be set off are both pre-petition.  Even if the more stringent requirements of section 553 applied, however, the Court concludes that the debts may be set off because both debts are pre-petition.[2]

1.   Mutuality of the Parties

Under either section, to exercise the right of setoff, there must be mutuality between the parties, that is the estate must seek to set off a debt it owes to the creditor against a debt the

---

[2]   Because the Court concludes that the estate may set off the two obligations, the Court will not consider the Trust's arguments about the amount of McKesson's claim in the event there is no right of setoff.

5

creditor owes to the estate.  See, e.g., Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18 (1995) (holding that the right of setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A'.") (quoting Studley v. Boylston Nat'l Bank, 229 U.S. 523, 528 (1913)); In re Winstar Commc'ns, Inc., 2003 Bankr. Lexis 1496 at *4 (Bankr. D. Del. 2003) aff'd 315 B.R. 660 (D. Del. 2004) (holding that to assert a right of setoff under section 553 of the Code, there must be (1) a pre-petition debt owed by the creditor to the debtor, (2) a pre-petition debt owed by the debtor to the creditor, and (3) the debt and claim must be mutual obligations); PSA, 277 B.R. at 54 (holding that state law permitted defendant to set off a debt owed him by the Plaintiff against the claim of the Plaintiff against him).

McKesson denies the right of the estate to set off the two claims arguing that there is not the requisite mutuality between the parties.  Specifically, McKesson asserts that under the APA SkinMedica became liable to McKesson for the debt owed by the Debtor for the returned product thereby eliminating any obligation of the Debtor to McKesson for that debt, except secondarily.  McKesson asserts that the estate may not set off the obligation owed by McKesson to it against SkinMedica's obligation for which the estate is only secondarily liable.  See,

6

e.g., 5 <u>Collier on Bankruptcy</u>, ¶ 553.03[3][b][i] (15th ed. rev.
2005) (section 553 does not permit triangular setoff, i.e., where
A is attempting to offset a debt it owes to B against an
obligation owed to A by C).

The Debtor and Trust dispute McKesson's argument.  They
assert that the debt owed by the Debtor to McKesson for returned
product may be set off against the obligation owed by McKesson to
the Debtor for product sold to it.  The Trust notes that in the
proof of claim filed by McKesson two months after the sale to
SkinMedica was approved, McKesson included the amounts due for
the returned product.  This, the Trust argues, is an admission by
McKesson that the estate still owed McKesson for that debt,
notwithstanding the fact that SkinMedica assumed the liability in
the APA.[3]

Further, the Trust notes that under state law the assumption
of a debt by a third party does not relieve the original obligor
of liability.  <u>See, e.g.</u>, 13 <u>Williston on Contracts</u>, § 37:12 (4th
ed.) (where one party agrees to pay the obligation of another,
the creditor has the right to sue either party for satisfaction
of that obligation); <u>Corbin on Contracts</u> § 787(6).  <u>See also</u>,
<u>Kraus v. Willow Park Pub. Golf Course</u>, 73 Cal. App. 3d 354, 371

---

[3]   The Court rejects this argument.  The proof of claim
filed by McKesson stated that it reflected the obligation owed to
it as of the petition date.  (<u>See</u> Garfinkle Declaration at
Exhibit 7, Attachment A, ¶'s 3 & 6.)

(1977) (holding that "a third party creditor beneficiary [McKesson] can sue either the promisor [SkinMedica] or the promisee [the Debtor] or may join them and obtain judgment against both.")

The Court rejects McKesson's argument. There is nothing in the APA which releases the estate from the debt it owed to McKesson for the returned product. Nor is there anything in that agreement which converts the estate from the primary obligor on the McKesson debt to a secondary obligor. At all times the estate remained obligated to pay the McKesson payable. Thus, the debt for returns and the debt for the product sold by the Debtor to McKesson are mutual debts, being owed to and from the same parties. Therefore, there is the mutuality of the parties necessary to set off the McKesson payable against the McKesson receivable.

    2.   <u>Mutuality of the Debts</u>

McKesson argues nonetheless that setoff is not available because its right to payment under the APA is a post-petition obligation. As such, McKesson argues it cannot be set off against the pre-petition account receivable that McKesson owes to the Debtor. <u>See, e.g.</u>, <u>Cooper-Jarrett, Inc. v. Central Transport, Inc.</u>, 726 F.2d 93, 96 (3d Cir. 1984) (holding that a creditor may not set off a pre-petition claim against a post-petition debt it owes to the debtor).

In addition to arguing that this is not required under section 558 when the estate is the one seeking to set off, the Trust disputes McKesson's facts.  As noted, McKesson has included in its proof of claim the amounts due for the returned product.  This, the Trust argues, is an admission by McKesson that this obligation is a pre-petition debt.

The Court agrees with the Trust.  The obligation created post-petition by the APA is the obligation of SkinMedica to pay the debt owed by the Debtor for the McKesson returns.  The obligation of the Debtor to pay that debt arose pre-petition (in 2003 and 2004).  As noted above, the APA did nothing to change the Debtor's obligation to McKesson.  Thus, the debts owed to and from McKesson are both pre-petition obligations.[4]

B.    Intention of the APA

McKesson also suggests that the estate should be obligated to set off the amount due by McKesson against McKesson's pre-petition unsecured claim for other products (which McKesson asserts is in excess of $6.8 million).  To do otherwise, McKesson asserts, would amend the APA or frustrate its intention to pay McKesson in full for the Vaniqa returned product.

---

[4]  McKesson admitted in oral argument on the motion for reconsideration that both obligations arose pre-petition.  It argued nonetheless that the asset purchase agreement changed the obligor and therefore eliminated the mutuality of parties, an argument which the Court rejected above.

9

Again, the Court disagrees.  The APA in Section 2.03
provided that SkinMedica would only pay what the Debtor owed to
McKesson for returned product.  McKesson conceded at the oral
argument on its motion for reconsideration that the parties pre-
petition had offset their mutual debts (stating that it never
considered it would have to pay for product it ordered from the
Debtor because the Debtor owed it more than $6 million for
product returns against which it could offset its debt).
Therefore, the Court concludes that the definition of Liability
to Customers contained in the APA meant the net obligation owed
for the Vaniqa product (that is the amounts due to McKesson for
returned product less the amount due to the Debtor for product
purchased).

Furthermore, the setoff of the account receivable for this
new product against the account payable for returned product does
not defeat the intent of the APA.  The intent of the APA is to
pay McKesson only for the obligations the Debtor owed it.  To the
extent the Debtor has a defense (its right of setoff), there is
no obligation and the estate is entitled to the escrowed funds.

Contrary to McKesson's argument, the APA did not intend to
elevate McKesson's claim to administrative status; it simply
provided a second source of payment of that claim.  To the extent
there is no claim, because of the estate's right of setoff,
neither the estate nor SkinMedica is obligated to pay McKesson.

10

IV.   <u>CONCLUSION</u>

For the reasons stated above, the Motion of McKesson to compel payment of the escrow funds will be denied.

An appropriate Order is attached.


                                        BY THE COURT:

Dated: February 6, 2006                 Mary F. Walrath
                                        United States Bankruptcy Judge